# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF CONNECTICUT

AETNA LIFE INSURANCE COMPANY,

                    Petitioner,

    v.

ARAMARK SERVICES, INC. f/k/a ARAMARK
CORPORATION; ARAMARK SERVICES, INC.
GROUP HEALTH PLAN; ARAMARK UNIFORM
SERVICES GROUP HEALTH AND WELFARE
PLAN; and ARAMARK BENEFITS
COMPLIANCE REVIEW COMMITTEE,

                    Respondents.

Civil Action No. 3:24-CV-272-SRU

March 29, 2024

## RESPONDENTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STAY, DISMISS, OR TRANSFER IN FAVOR OF THE FIRST-FILED ACTION IN THE EASTERN DISTRICT OF TEXAS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6)

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................1

II.  ARGUMENT ...........................................................................................................5

    A.  The Court Should Apply the First-Filed Rule and Dismiss Aetna's Petition. ........................................................................................................5

        1.  The Texas Action Was First Filed. ...........................................7

        2.  The Connecticut Action Is Entirely Derivative of the Texas Action. ..........7

        3.  The Balance of Convenience Favors the Texas Action. ..............................7

        4.  Special Circumstances Do Not Warrant Departure from the First-Filed Rule. ...............................................................11

    B.  Granting Aetna's Petition Would Violate the Principles of Comity and Sound Judicial Administration. ...............................................................12

    C.  Alternatively, The Court Should Deny Aetna's Petition Because Aramark's ERISA Claims Seek Equitable Relief, Which the Parties Expressly Excluded from Mandatory Arbitration. ...............................................13

        1.  The Court, Not an Arbitrator, Should Adjudicate Arbitrability ................13

        2.  Equitable Claims Are Unambiguously Carved-Out from Mandatory Arbitration. ..............................................................15

        3.  Aramark's Claims in the Texas Action Seek Exclusively Equitable Relief. .................................................................21

III.  CONCLUSION ......................................................................................................28

## TABLE OF AUTHORITIES

**Cases**

*800-Flowers, Inc. v. Intercontinental Florist, Inc.*
860 F. Supp. 128 (S.D.N.Y. 1994) ........................................................................ 5, 8, 12

*Acosta v. Bridgeport Health Care Center, Inc.*
2018 WL 11446779 (D. Conn. 2018) ............................................................................ 25

*Aetna Life Ins. Co. v. Bayona*
223 F.3d 1030 (9th Cir. 2000) ...................................................................................... 23

*Am. Home Assurance Co. v. Queensridge Towers LLC*
2018 U.S. Dist. LEXIS 246715 (S.D.N.Y. Dec. 21, 2018) ........................................... 5, 6

*Archer & White Sales, Inc. v. Henry Schein, Inc.*
935 F.3d 274 (5th Cir. 2019) ................................................................... 7, 14, 20, 21

*AT&T Techs. v. Commc'ns. Workers of Am.*
475 U.S. 643 (1986) ........................................................................................................ 16

*Brown v. United of Omaha Life Ins. Co.*
661 F. App'x 852 (6th Cir. 2016) ................................................................................. 24

*C Fink Family v. Am. Gen. Life Ins. Co.*
2011 U.S. Dist. LEXIS 39382 (S.D.N.Y. Apr. 7, 2011) ............................................ 8, 12

*C.f. Sullivan-Mestecky v. Verizon Commc'ns Inc.*
961 F.3d 91 (2d Cir. 2020) ............................................................................................ 10

*Carver v. Bank of N. Y. Mellon*
2017 WL 1208598 (S.D.N.Y. 2017) .............................................................................. 25

*Cent. States, Se. & Sw. Areas Health and Welfare Fund v. Gerber Life Ins. Co.*
771 F.3d 150 (2d Cir. 2014) .......................................................................................... 25

*CIGNA Corp. v. Amara*
563 U.S. 421 (2011) ............................................................................................... *passim*

*Colbert v. P&G*
2017 U.S. Dist. LEXIS 141268 (S.D.N.Y. Aug. 30, 2017) .............................................. 9

*Cunningham v. Cornell Univ.*
2018 WL 4279466 (S.D.N.Y. Sept. 6, 2018) ................................................ 11, 26, 27, 28

*DDK Hotels, LLC v. Williams-Sonoma, Inc.*
6 F.4th 308 (2d Cir. 2021) ...................................................................................... 13, 15

*Donovan v. Bierwirth*
680 F.2d 263 (2d Cir. 1982) .......................................................................................... 22

*Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*
524 F.2d 1275 (5th Cir. 1975) ........................................................................................ 7

*Emp'rs. Ins. v. Fox Entm't Grp., Inc.*
522 F.3d 271 (2d Cir. 2008) ................................................................................ 5, 6, 11, 12

*First City Nat'l Bank & Trust Co. v. Simmons*
878 F.2d 76 (2d Cir. 1989) ........................................................................ 5

*Frydman v. Diamond*
2015 U.S. Dist. LEXIS 120774 (S.D.N.Y. Sept. 10, 2015) ...................... 17, 21

*Gabriel v. Alaska Elec. Pension Fund*
773 F.3d 945 (9th Cir. 2014) ................................................................... 24

*Galanova v. Morgan Stanley Servs. Grp. Inc.*
2023 U.S. Dist. LEXIS 169606 (S.D.N.Y. Sept. 22, 2023) ...................... 18

*Garthwait v. Eversource Energy Co.*
2022 WL 17484817 (D. Conn. Dec. 7, 2022) ....................................... 26, 27

*GateGuard, Inc. v. MVI Sys. LLC*
2021 U.S. Dist. LEXIS 185722 (S.D.N.Y. Sept. 28, 2021) ...................... 20, 21

*GC Am. Inc. v. Kevin Hood, et al.*
2023 WL 6290281 (N.D. Ill. Sept. 27, 2023) ......................................... 25

*Gearlds v. Entergy Servs.*
709 F.3d 448 (5th Cir. 2013) ....................................... 10, 23, 24, 26

*Gimeno v. NCHMD, Inc.*
38 F.4th 910 (11th Cir. 2022) ................................................................ 24

*Granite Rock Co. v. Int'l Bhd. of Teamsters*
561 U.S. 287 (2010) ....................................................................... 15, 17, 18

*Great-West Life & Annuity Ins. Co. v. Knudson*
534 U.S. 204 (2002) ................................................................. 23, 25, 27, 28

*Group 1 Auto., Inc. v. Aetna Life Ins. Co.*
No. 4:20-cv-1290 (S.D. Tex. Apr. 10, 2020) ....................................... 4, 21, 22

*Harmon v. Shell Oil Co.*
2023 WL 2474503 (S.D. Tex. Mar. 13, 2023) ................................. 10, 26, 28

*Hartford Fire Ins. Co. v. Dollar Tree Stores*, *Inc.*
2005 U.S. Dist. LEXIS 53635 (D. Conn. June 30, 2005) ......................... 6

*Healy v. Sea Gull Specialty Co.*
237 U.S. 479 (1915) ............................................................................... 8

*Holick v. Cellular Sales of N.Y., LLC*
802 F.3d 391 (2d Cir. 2015) ............................................................. 17, 18

*In re DeRogatis*
904 F.3d 174 (2d Cir. 2018) ........................................... 24, 25, 26, 27

*In re Omnicom Grp. Inc. Erisa Litigation*
2022 WL 18674830 (S.D.N.Y. Dec. 23, 2022) ...................................... 22

*J2 Res., LLC v. Wood River Pipe Lines, LLC*
2020 U.S. Dist. LEXIS 130594 (S.D. Tex. July 23, 2020) ...................... 14

*Kenseth v. Dean Health Plan, Inc.*
722 F.3d 869 (7th Cir. 2013) ............................................................... 24

*Lavvan, Inc. v. Amyris, Inc.*
2021 U.S. Dist. LEXIS 138887 (S.D.N.Y. July 26, 2021) ............................. 19

*Local Union 97, IBEW v. Niagara Mohawk Power Corp.*
67 F.4th 107 (2d Cir. 2023) ....................................................... 17, 18, 19

*Major, Lindsey & Africa, LLC v. Mahn,*
2010 U.S. Dist. LEXIS 94033 (S.D.N.Y. Sept. 7, 2010) ............................... 19

*Mamma Mia! USA Tour 2 Ltd. P'ship v. Theatrical Arts Int'l, Inc.*
2006 U.S. Dist. LEXIS 117618 (S.D.N.Y. Aug. 17, 2006) .............................. 6

*McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*
858 F.2d 825 (2d Cir. 1988) ............................................................... 17

*Menkes v. Prudential Ins. Co. of Am.*
762 F.3d 285 (3d Cir. 2014) ............................................................... 24

*Mertens v. Hewitt Assocs.*
508 U.S. 248 (1993) ......................................................................... 23

*Metro. Life Ins. Co. v. Bucsek*
919 F.3d 184, 195 (2d Cir. 2019) ......................................................... 14

*Minerley v. Aetna, Inc. et al.*
No. 13-cv-1377 (D.N.J. Feb. 16, 2017) .................................................... 22

*Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*
577 U.S. 136 (2016) ..................................................................... 24, 25

*N.Y. v. Oneida Indian Nation*
90 F.3d 58 (2d Cir. 1996) .............................................................. 16, 17

*NASDAQ OMX Grp., Inc. v. UBS, Sec., LLC*
770 F.3d 1010 (2d Cir. 2014) ...................................................... 14, 15, 16

*Nat'l Equip. Rental, Ltd. v. Fowler*
287 F.2d 43 (2d Cir. 1961) ................................................................. 7

*Nat'l Union Fire Ins. Co. v. Las Vegas Prof'l Football L.P.*
2010 WL 286634 (S.D.N.Y. Jan 14 2010) .................................................... 5

*Northern Jersey Plastic Surgery Ctr., LLC v. 1199SEUI Nat'l Benefit Fund*
2023 WL 5956142 (S.D.N.Y. Sept. 13, 2023) ............................................... 25

*Peck v. Aetna Life Ins. Co.*
No. 3:04-cv-1139 (D. Conn. Nov. 4, 2004) ................................................. 22

*Pennzoil Exploration & Prod. Co. v. Ramco Energy*
139 F.3d 1061 (5th Cir. 1998) ............................................................. 18

*Pereira v. Farace*
413 F.3d 330 (2d Cir. 2005) ........................................................... 27, 28

*Popvchak v. UnitedHealth Grp. Inc.*
   2023 WL 6125540 (S.D.N.Y. Sept. 19, 2023)..................................................... 25

*Praxair, Inc. v. Morrison Knudsen Corp.*
   2001 U.S. Dist. LEXIS 1130 (W.D.N.Y. Feb. 5, 2001) ......................... 8, 10, 11

*Querette v. Chromalloy Gas Turbine LLC*
   2023 U.S. Dist. LEXIS 4502 (S.D.N.Y. Jan. 10, 2023).................................... 13

*Ramos v. Banner Health*
   2019 WL 1558069 (D. Colo. 2019)................................................................ 28

*Reed v. MedStar Health, Inc.*
   2023 WL 5154507 (D. Md. 2023) ................................................................. 28

*Rose v. PSA Airlines*
   80 F.4th 488 (4th Cir. 2023) ................................................................. 24, 25

*SEC v. Milton*
   2022 U.S. Dist. LEXIS 140715 (S.D.N.Y. Aug. 8, 2022)............................... 10

*Silva v. Metro. Life Ins. Co.*
   762 F.3d 711 (8th Cir. 2014) ...................................................................... 24

*Silver Line Bldg. Prods. LLC v. J-Channel Indus. Corp.*
   12 F. Supp. 3d 320 (E.D.N.Y. 2014) ............................................. 6, 12, 18, 20

*Simon v. Aetna Life Ins. Co. et al.*
   No. 6:18-cv-01097 (M.D. Fla. Aug. 10, 2018) ............................................ 22

*Snowbridge Advisors LLC v. Soho Square Cap. LLP*
   2023 WL 8368630 (2d Cir. 2023)................................................................. 16

*Specht v. Netscape Commc'ns. Corp.*
   306 F.3d 17 (2d Cir. 2022)..................................................................... 17, 19

*Staropoli v. Metro. Life Ins. Co.*
   2023 WL 1793884 (3d Cir. Feb. 7, 2023)..................................................... 24

*Sullivan-Mestecky v. Verizon Commc'ns Inc.*
   961 F.3d 91 (2d Cir. 2020)............................................................... 24, 26, 27

*Swartzenbruber v. Sentara RMH Med. Ctr.*
   2023 WL 6279361 (W.D. Va. Sept. 26, 2023) .............................................. 25

*Teets v. Great-W. Life & Annuity Ins. Co.*
   921 F.3d 1200 (10th Cir. 2019) ................................................................. 24

*Tracey v. Mass. Inst. of Tech.*
   395 F. Supp. 3d 150 (D. Mass. 2019) ......................................................... 28

*Ultimate Nutrition, Inc. v. Leprino Foods Co.*
   2023 U.S. Dist. LEXIS 234773 (D. Conn. Dec. 19, 2023)................................. 9

*Ultra Premium Servs. v. Kompaniya*
   2021 U.S. Dist. LEXIS 190217 (S.D. Tex. Aug. 20, 2021).............................. 14

*United Surgical Assistants, LLC v. Aetna Life Ins. Co. et al.*
    No. 8:14-cv-00211 (M.D. Fla. Sept. 24, 2014)..............................................................22

*Vellali v. Yale Univ.*
    2023 WL 2552719 (D. Conn. Mar. 17, 2023) ........................................................26, 27

*Volt Info. Scis. v.. Bd. of Trs.*
    489 U.S. 468 (1989)..........................................................................................................16

*Williams v. Centerra Grp., LLC*
    579 F. Supp. 3d 778 (D.S.C. 2022)................................................................................28

*Wilson v. DirectBuy, Inc.*
    821 F. Supp. 2d 510 (D. Conn. 2011)............................................................................11

*Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home & Allied Workers*
    788 F.2d 894 (2d Cir. 1986)............................................................................................19

**Statutes**

28 U.S.C. § 1404(a) ............................................................................................................. 9

29 U.S.C. § 1002(21)(A)(iii)............................................................................................... 28

29 U.S.C. § 1132(a)(2)................................................................................................*passim*

29 U.S.C. § 1132(a)(3)................................................................................................*passim*

## I.    INTRODUCTION

Aetna Life Insurance Company, Inc. ("Aetna") initiated this proceeding in an unabashed attempt to deprive Aramark Services, Inc. f/k/a Aramark Corporation; Aramark Services, Inc. Group Health Plan; Aramark Uniform Services Group Health and Welfare Plan; and Aramark Benefits Compliance Review Committee (collectively, "Aramark") from pursuing claims against Aetna in its chosen forum, the Eastern District of Texas.  The first-filed rule, as well as the considerations of efficiency and the sound administration of justice underpinning it, compel the conclusion that the Court stay, dismiss, or transfer this proceeding to the Eastern District of Texas where Aramark filed its complaint six months ago.  If the Court is inclined to assess the merits of this proceeding, then it should dismiss Aetna's petition to compel arbitration as a matter of law because (i) Aramark's claims seeking exclusively equitable relief are not subject to arbitration under the Parties' Aetna-drafted arbitration clause, and (ii) Aetna has successfully argued in a separate proceeding that claims identical to Aramark's fall outside the Aetna-drafted arbitration clause.

Aramark initially sued Aetna in the Eastern District of Texas on September 27, 2023 for Aetna's violations of the Employee Retirement Income Security Act of 1974 ("ERISA"),[1] including, *inter alia,* 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3) (the "Texas Action").  On February 28, 2024, before its answer was due in the Texas Action, Aetna initiated this proceeding to compel arbitration of Aramark's Texas Action claims (the "Petition") in Connecticut (the "Connecticut

---

[1]      It is undisputed that Aetna initiated the Texas Action on September 27, 2023.  (*See* Petition at ¶ 21.)

Action").[2]  Later that day, Aetna filed a motion to stay proceedings pending arbitration in the Texas Action (the "Stay Motion").[3]

Aetna should have filed a motion to compel arbitration in the Texas Action.  It filed the Connecticut Action five months after the Texas Action.  The Connecticut Action is entirely derivative of the Texas Action.  Aetna's attempt to shift adjudication of Aramark's claims from the Eastern District of Texas to Connecticut violates the first-filed rule and creates the possibility of inconsistent judgments.  As a result of Aetna's gamesmanship, two district courts are now pinned against each other and tasked with adjudicating identical issues.  In resolving the Stay Motion, the Eastern District of Texas must necessarily assess the merits of this motion: whether Aramark's claims are subject to mandatory arbitration.[4]

Aetna's Petition is all the more improper because Aetna cannot credibly argue that Connecticut is the more convenient venue (other than for itself) or that other special circumstances otherwise warrant departure from the first-filed rule.  The facts bear this out.  Aramark asserts that Aetna breached its fiduciary duties and engaged in prohibited transactions through, among other things, its wrongful claims processing policies and practices, resulting in Aramark plan funds being used improperly, including to make excessive payments to providers and hospitals.  Nowhere was Aetna's wrongful conduct more pronounced than in Texas:

- Aetna has been doing business in Texas since 1909, and as of 2021, is the 6th largest insurer in the state;[5]

---

[2]     On March, 1, 2024, days after filing its Petition, Aetna filed a memorandum of law in support of its Petition. ("Aetna's Memorandum").  That Aetna's Petition was not "accompanied by a memorandum of law . . . may be deemed sufficient cause to deny" it.  D. CONN. L. CIV. R. 7(a)(1).

[3]     (Declaration of David. I. Schiefelbein ("Schiefelbein Decl."), ¶ 3, Ex. A, the Stay Motion.)

[4]     (Schiefelbein Decl., ¶ 4, Ex. B, Aramark's Response to the Stay Motion.)

[5]     (ECF No, 3-1, Declaration of Peter J. Kocoras, Ex. A, Aramark's First Amended Complaint in the Texas Action (the "Texas Complaint"), at ¶ 13(a).)

- Aramark has 515 profit centers in Texas as compared to only 49 in Connecticut;[6]

- Aramark has more than 16,000 employees in Texas, more than in any other state and more than 12 times the number of employees it has in Connecticut;[7]

- Nearly 12% of Aramark's workforce is in Texas, whereas less than 1% of its workforce is in Connecticut;[8]

- Aramark plan beneficiaries residing in Texas have submitted significantly more claims than Aramark plan beneficiaries residing in Connecticut; and[9]

- Aetna has used Aramark plan funds to reimburse more providers in Texas than any other state;[10]

This Court should therefore apply the first-filed rule and stay, dismiss, or transfer this proceeding to the Eastern District of Texas, the court with original jurisdiction over the matter. There is no need to reach the merits of Aetna's Petition.

If the Court reaches the merits of the Petition, then the Court should dismiss the Petition as a matter of law because Aramark's claims, seeking exclusively equitable relief, are not subject to mandatory arbitration under the Parties' contract (the "Agreement"). The arbitration clause expressly and unambiguously carves out claims for equitable relief (the "Exclusionary Provision"):[11]

> Any controversy or claim arising out of or relating to this Agreement or the breach, termination, or validity thereof, *except for temporary, preliminary, or permanent injunctive relief or any other form of equitable relief*, shall be settled by binding arbitration in Hartford, CT, administered by the American Arbitration Association ('AAA') and conducted by a sole arbitrator in accordance with the AAA's Commercial Arbitration Rules ('"Rules'). . .

---

[6]    (Schiefelbein Decl., ¶ 5, Ex. C, Declaration of James R. Startare, at ¶¶ 7, 9.)

[7]    (*Id*. at ¶)

[8]    (*Id*. ¶¶ 6-9)

[9]    (*Id*. ¶¶ 10-11)

[10]    (*Id*.)

[11]    Aetna largely disregards the Exclusionary Provision and misrepresents the Agreement as requiring that "all disputes related to the MSA be submitted to arbitration." (Aetna's Memorandum at 1.) The plain language of the Arbitration Clause says otherwise.

(the "Arbitration Clause").[12]

Aramark's claims against Aetna for breaching its fiduciary duties under ERISA §§ 1132(a)(2) and 1132(a)(3) are exclusively equitable, and therefore not subject to mandatory arbitration.[13]  The Court's analysis can start and end with *Aetna's* own prior successful argument that ERISA breach of fiduciary duty claims are not arbitrable under an *identical arbitration clause*. *Group 1 Auto., Inc. v. Aetna Life Ins. Co*., No. 4:20-cv-1290, ECF No. 27-3, at 4 (S.D. Tex. Apr. 10, 2020) (granting Aetna's motion to dismiss Group 1's § 1132(a)(2) from arbitration because "[t]he overwhelming number of Courts that have considered whether a claim for restoration of plan losses or funds against a fiduciary seeks an equitable or legal remedy have determined that such a claim is equitable in nature").[14]  Aetna has also successfully argued that ERISA breach of fiduciary duty claims are exclusively equitable to avoid the Seventh Amendment jury trial right. Lest there be any doubt, controlling precedent supports Aramark's (and Aetna's prior) assertion that claims under ERISA §§ 1132(a)(2) and 1132(a)(3) seek equitable relief.

For the foregoing reasons, and as detailed more fully below, Aramark respectfully requests that the Court stay, dismiss, or transfer the Connecticut Action to the Eastern District of Texas under the first-filed rule.  Alternatively, this Court should dismiss Aetna's Petition because Aramark's claims seek equitable relief and thus fall within the unambiguous carve-out language in the Aetna-drafted Arbitration Clause.

---

[12]    (*Id*. at 3 (*citing* Agreement at § 15 (emphasis added).)

[13]    (The Texas Complaint at ¶ 16 n.2 ("The Agreement contains an arbitration clause that excludes equitable claims, like ERISA claims, from the scope of any arbitration.").)

[14]    (*See* Schiefelbein Decl.,¶ 6, Ex. D, Ex. A-5 to Aetna's Mot. to Dismiss in *Group 1*, Arbitrator's Decision.)

## II.    ARGUMENT

### A.    The Court Should Apply the First-Filed Rule and Dismiss Aetna's Petition.

Aetna asks this Court to violate "the well-settled principle in this Circuit that where there are two competing lawsuits, the first suit should have priority." *First City Nat'l Bank & Trust Co. v. Simmons*, 878 F.2d 76, 79 (2d Cir. 1989) (affirming the stay of the second-filed action in favor of the first).   This first-filed rule "embodies considerations of judicial administration and conservation of resources by avoiding duplicative litigation and honoring the plaintiff's choice of forum." *Emp'rs. Ins. v. Fox Entm't Grp., Inc.*, 522 F.3d 271, 275 (2d Cir. 2008) (reversing the district court's decision for failure to apply the first-filed rule).   The first-filed rule "should not be disregarded lightly." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 132 (S.D.N.Y. 1994) (granting motion to dismiss in favor of the first-filed action).   This Court should apply the first-filed rule and stay, dismiss, or transfer this proceeding in favor of the Texas Action.[15]

The facts here parallel *American Home Assurance Co. v. Queensridge Towers LLC* ("*American Home*"), No. 18-cv-03628, 2018 U.S. Dist. LEXIS 246715, at *7 (S.D.N.Y. Dec. 21, 2018).   In *American Home,* the Southern District of New York refused to entertain a second-filed petition to compel arbitration in New York and transferred the matter to the District of Nevada where the matter was first-filed.   *Id.*   The *American Home* court explained that when "a party alleges an exception to the first-to-file rule, *the court where the first-filed action was brought will rule on whether the exception applies.*"   *Id.* at *5 (emphasis added); *see also Mamma Mia! USA*

---

[15]      Aetna's reliance on *Nat'l Union Fire Ins. Co. v. Las Vegas Prof'l Football L.P.*, 2010 WL 286634, at *3 (S.D.N.Y. Jan 14 2010) is misplaced.   *Nat'l Union* does not disagree that "[g]enerally, where there are two competing lawsuits, the first suit should have priority absent the showing of … special circumstances which justify giving priority to the second."   *Id.* at *7.   Rather, unlike here, that matter involved a party disregarding a "broad" arbitration clause that plainly covered the conduct at issue.   As discussed in detail *infra*, the Exclusionary Provision in the Arbitration Clause unambiguously carves out claims for equitable relief such as those arising under ERISA.

*Tour 2 Ltd. P'ship v. Theatrical Arts Int'l, Inc.*, No. 06-cv-6079, 2006 U.S. Dist. LEXIS 117618, at *5 (S.D.N.Y. Aug. 17, 2006) (denying second-filed petition to compel arbitration because the "California Court [in which the first-filed action was pending] could and would order arbitration in New York if the court determined that it was proper"). Because the Texas Action was filed first, this Court's analysis can start and end here with the Eastern District of Texas left to determine which forum should hear the case.[16] *Am. Home Assur.*, 2018 U.S. Dist. LEXIS 246715, at *5 ("There is a bright line rule that the court before which the first-filed action was brought determines which forum will hear the case.").

If the Court elects to analyze the exceptions to the first-filed rule, then it should conclude that no special circumstances support pursuing the Connecticut Action over the Texas Action. When the first-filed suit involves the same claims as the second-filed action, it should be given priority unless the first-filed Court determines that "the balance of convenience favors the second-filed action" or that "special circumstances warrant giving priority to the second suit." *Emp'rs. Ins.*, 522 F.3d at 275; *see also Hartford Fire Ins. Co. v. Dollar Tree Stores, Inc.*, No. 3:05-cv-98, 2005 U.S. Dist. LEXIS 53635, *6 (D. Conn. June 30, 2005) ("The general rule in the Second Circuit is to give priority to the first-filed suit absent a showing that the second venue is more convenient."). There are four considerations when assessing whether to deviate from the first-to-file rule. All four favor the Texas Action.

---

[16]     "The administration of justice would be chaotic indeed if one district court could order another pursuant to § 1404(a) to divest itself of jurisdiction and to transfer a case properly before it." *Silver Line Bldg. Prods. LLC v. J-Channel Indus. Corp.*, 12 F. Supp. 3d 320, 329 (E.D.N.Y. 2014). And "if the second-filed court were to determine that an exception to the first-to-file rule applied, it would have no authority to reach out and grab the first-filed action." *Id.* (staying the second-filed action pending the resolution of the motion to transfer in the first-filed action).

### 1. The Texas Action Was First Filed.

Aramark filed the Texas Action five months before Aetna filed the Connecticut Action. These facts are not in dispute.

### 2. The Connecticut Action Is Entirely Derivative of the Texas Action.

The matter before this Court is duplicative of the Texas Action. Aetna concedes that the "dispute underlying this Petition [are] the claims in Respondents' complaint in the Eastern District of Texas."[17] Aetna's Stay Motion requires the Eastern District of Texas to determine: (i) whether Aramark's claims are within the scope of the Arbitration Clause; and (ii) whether a court or an arbitrator should resolve arbitrability.[18] *See Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 277 (5th Cir. 2019) (finding that a court may not stay a case and compel arbitration without making these determinations). The Petition requires this Court to answer the same questions. "Two simultaneously pending lawsuits involving identical issues and between the same parties . . . is certainly anything but conducive to the orderly administration of justice." *Nat'l Equip. Rental, Ltd. v. Fowler*, 287 F.2d 43, 46 (2d Cir. 1961) (staying the second-filed action pending the resolution of the motion to transfer in the first-filed action). This Court should not burden itself or Aramark, or risk the possibility of inconsistent judgements, by allowing this duplicative action to proceed.[19]

### 3. The Balance of Convenience Favors the Texas Action.

The "factors relevant to the balance of convenience analysis are essentially the same as

---

[17]  (Petition at ¶ 11.)

[18]  (*See* Schiefelbein Decl. at ¶ 4, Ex. B.)

[19]  Aetna could have moved to compel arbitration in the Texas Action. *See Dupuy-Busching Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1276, 1279 (5th Cir. 1975) (affirming arbitration order to directing parties to arbitrate their dispute in the contractual place of arbitration outside of the Fifth Circuit). Aetna does not identify any contrary authority, nor is Aramark aware of any.

those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)."

*Id*. Here, the balance of convenience favors the Texas Action: [20]

*Plaintiffs' Choice of Forum*.  "[I]n reference to the first filed rule, and not merely a transfer,

there is a strong presumption in favor of the forum chosen by the original plaintiff." *800-Flowers*,

860 F. Supp. at 135.  Aramark is "the master of its complaint." *C Fink Family v. Am. Gen. Life*

*Ins. Co.*, No. 10-cv-9230, 2011 U.S. Dist. LEXIS 39382, at *9-10 (S.D.N.Y. Apr. 7, 2011)

(affirming the dismissal of the second-filed action); *see also Healy v. Sea Gull Specialty Co.*, 237

U.S. 479, 480 (1915) ("[T]he plaintiff is absolute master of what jurisdiction he will appeal to.").

Because strong deference should be given to Aramark's choice of forum, this presumption favors

the Texas Action.

*Trial Efficiency, Calendar Congestion, and Interests of Justice*.  Time to trial is significantly

faster in the Eastern District of Texas.  The time to trial is 40.6 months in the District of Connecticut

versus 19.0 months in the Eastern District of Texas.[21]  Because "the case would be likely to go to

trial [more than] a full year quicker [in the Eastern District of Texas] than if it remained in this

District," this factor weighs in favor of the Texas Action.  *Praxair, Inc. v. Morrison Knudsen*

*Corp.*, No. 00-cv-0892E, 2001 U.S. Dist. LEXIS 1130, at *17 (W.D.N.Y. Feb. 5, 2001) (granting

transfer to the court with the lower caseload).

*Locus of Operative Facts*.  This factor favors the forum with "significantly greater contacts

with the action." *800-Flowers*, 860 F. Supp. at 135.  Aetna breached its fiduciary duties through

---

[20]    The Parties' agreement that arbitration take place in Hartford, Connecticut is of no consequence when it comes to determining the proper venue of this litigation.  (Aetna's Memorandum at 9).  Contrary to Aetna's insinuations otherwise, the Aetna-drafted Arbitration Clause does not contain a choice of venue provision that controls in what court equitable claims may be brought.

[21]    *See* United States Courts, *U.S. District Courts–Combined Civil and Criminal Federal Court Management Statistics* (March 31, 2023) https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distcomparison0331.2023.pdf.

its wrongful claims processing policies and practices, which included substantial overpayments to providers and engagement in prohibited transactions. Nowhere did this happen more than in Texas. Aetna reviewed, adjudicated, and paid far more claims in Texas than it did in any other state, including Connecticut.[22] This should be of no surprise to Aetna. More Aramark plan participants were in Texas and more claims were submitted in Texas.[23] Aramark has 12% of its workforce (more than 16,000 employees) across 515 locations in Texas. In Connecticut, about 1% of Aetna's workforce (less than 1,300 employees) is distributed across 49 locations.[24] Because "most of the operative facts" occurred in Texas, this factor weighs in favor of the Texas Action. *Ultimate Nutrition, Inc. v. Leprino Foods Co.*, No. 3:23-cv-00677, 2023 U.S. Dist. LEXIS 234773, at *25 (D. Conn. Dec. 19, 2023) (finding this factor weighs in favor of transfer because the alleged breach occurred in the destination court).

*The Relative Ease of Access to Sources of Proof*. "In an era of electronic documents, easy copying and overnight shipping," absent extraordinary circumstances this factor weighs in favor of the first-filed action. *Colbert v. P&G*, No. 16-cv-2636, 2017 U.S. Dist. LEXIS 141268, at *6 (S.D.N.Y. Aug. 30, 2017) (granting transfer in part because the vast majority of evidence was electronic). No physical evidence is involved in this matter other than minimal documentary evidence, which, if not already in electronic format, can be scanned and transmitted digitally. This factor does not support proceeding in Connecticut.

*Convenience of Witnesses & the Availability of Compulsory Process to Secure Their Attendance*. This factor has minimal weight when the "witnesses likely to testify are located in both the present and proposed districts, as well as outside of those districts." *SEC v. Milton*, No.

---

[22]    (Schiefelbein Decl. at ¶ 5; Ex. C at ¶¶ 10, 11.)

[23]    (*Id*., at ¶¶ 7-11.)

[24]    (*Id*. at ¶¶ 7, 9.)

21-cv-6445, 2022 U.S. Dist. LEXIS 140715, at *21 (S.D.N.Y. Aug. 8, 2022) (finding this factor was neutral).  Further, it is "generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship" and "and former employees are more likely to willingly attend than are non-party witnesses." *Praxair*, 2001 U.S. Dist. LEXIS 1130, at *13 (granting transfer).

Most witnesses likely to testify are employed by one of the parties.  To the extent third-party witnesses are called to testify, *e.g.*, hospital workers and providers, they are less likely to be located in Connecticut than in Texas where the majority of Plan beneficiaries and providers reside.

*Conflict of Laws*.  The Parties' Agreement provides only that federal law will govern the adjudication of ERISA claims.  As relevant here, the view adopted by the Third, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and critically Fifth Circuits', is that ERISA claims against fiduciaries seeking monetary relief to compensate for breaches of fiduciary duty are equitable where the claim is against an ERISA fiduciary.  *See generally,* cases cited *infra* Section B.3; *see also Gearlds v. Entergy Servs.*, 709 F.3d 448, 450-451 (5th Cir. 2013) (finding § 1132(a)(3) claims for monetary relief for breach of fiduciary duty are equitable because ERISA fiduciaries are "analogous to a trustee"); *Harmon v. Shell Oil Co.*, No. 3:20-cv-00021, 2023 WL 2474503 (S.D. Tex. Mar. 13, 2023) (finding § 1132(a)(3) claims for monetary relief against a fiduciary for breach of fiduciary duty are equitable, irrespective of whether they seek general or specific funds).

By contrast, there is a "split among *district courts* within [the Second] Circuit," addressed in detail below, that does not neatly follow the majority view.  *C.f. Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 99 (2d Cir. 2020) (finding § 1132(a)(3) claims alleging defendant is an ERISA fiduciary, and seeking monetary relief to compensate for such breach, are equitable in nature) (emphasis added); *but see Cunningham v. Cornell Univ.*, 2018 WL 4279466, at *3

(S.D.N.Y. Sept. 6, 2018) (finding ERISA claims against fiduciaries alleging breach of fiduciary duty are not equitable unless targeted at specific funds).  Aetna's improper attempt to forum shop and inject the Second Circuit's internal district split into this second-filed action should be rejected. It makes little sense to shift this action from the Eastern District of Texas, which would be bound to follow the majority view, in favor of a circuit with an internal split and unsettled law.  This factor favors proceeding with the Texas Action.

_The Familiarity of the Forum With The Law That Will Govern The Case._  ERISA claims are governed by federal law so courts in both forums are equally familiar with the law that will govern the case. *See Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 519 (D. Conn. 2011) ("Federal courts are presumed to be equally familiar with federal law.").  This factor favors the first-filed action.

_Relative Means of the Parties_.  When "[b]oth parties are large, public corporations listed on the New York Stock Exchange [] the relative means of the parties are relatively equal and not particularly pertinent." *Praxair*, 2001 U.S. Dist. LEXIS 1130, at *14.  This factor favors proceeding with the first-filed action.

### 4.  Special Circumstances Do Not Warrant Departure from the First-Filed Rule.

None of the limited number of circumstances sufficient to overcome the "presumption that the case filed earliest [] take priority" are present here. *Emp'rs. Ins.*, 522 F.3d at 274-275.

The Texas Action is not "an improper anticipatory declaratory judgment action" and was not motivated by "forum shopping alone." *Id*. at 275-276.  Aramark is not a would-be *defendant* that filed a declaratory judgment action "in response to a direct threat of litigation" from Aetna. *Id*.  Nor can Aetna show "the ties between the litigation and the first forum [are] so tenuous or *de minimis* that a full balance of convenience analysis would not be necessary to determine that the

second forum is more appropriate than the first." *Id.*  To the contrary, as discussed above, the ties between the litigation and the first-filed forum are strong.

      **B.**      **Granting Aetna's Petition Would Violate the Principles of Comity and Sound Judicial Administration.**

      Aetna's Motion raises a strong possibility of inconsistent federal court rulings because the Connecticut Action and the Texas Action involve the same parties and claims.  "The basic principles of promoting judicial efficiency and avoiding duplicative litigation that underlie the first-to-file doctrine" favor this Court deferring to the first-filed venue.  *Silver Line*, 12 F. Supp. 3d at 329.

      Aetna filed this action to distance itself (by about 1,500 miles) from its contradictory position in an earlier case that ERISA claims (just like Aramark's) are equitable and therefore excluded from mandatory arbitration under Aetna's standard arbitration clause, and to avoid controlling Fifth Circuit precedent that compels the same conclusion.  Aetna "should not be permitted to end-run [Aramark's] choice of forum" especially because the Texas Action was "filed months before plaintiff filed his complaint in this case."  *Fink Family*, 2011 U.S. Dist. LEXIS 39382, at *9.  If this proceeding is dismissed or transferred, then the "pending action in [Texas] will provide [Aetna] every opportunity to protect and vindicate the rights it sought adjudicated in the instant action."  *800-Flowers*, 860 F. Supp. at 136.  For the sake of efficiency and deference to Aramark's choice of forum, Aramark respectfully requests that the Court follow the first-filed rule.

### C. Alternatively, The Court Should Dismiss Aetna's Petition Because Aramark's ERISA Claims Seek Equitable Relief, Which the Parties Expressly Excluded from Mandatory Arbitration.

#### 1. The Court, Not an Arbitrator, Should Adjudicate Arbitrability.

Aetna's contention that the Arbitration Clause's adoption of the AAA rules reflects the Parties' intent to have an arbitrator resolve arbitrability is contradictory to Second Circuit law.[25] As Aetna's own cases hold, arbitrability "presumptively should be resolved by the court and not referred to the arbitrator" unless the parties "clearly and unmistakably" provide otherwise. *DDK Hotels, LLC v. Williams-Sonoma, Inc.*, 6 F.4th 308, 317 (2d Cir. 2021). It is "necessary to look to the plain language of the arbitration agreement to discern whether the parties clearly and unmistakably intended to delegate the arbitrability determination to the arbitrator." *Id*. at 322. When an arbitration clause "contains exclusionary language suggesting that the parties consented to arbitrate only a limited subset of disputes," and that exclusionary provision "*arguably excludes the present dispute* from the scope of the arbitration agreement," then the parties' intent to delegate the arbitrability of that dispute to an arbitrator is not clear and unmistakable. *Id*. at 319-321 (emphasis added). "In other words, whether the AAA Rules [] apply turns on the conditional premise that the dispute falls [outside of the Exclusionary Provision]." *Id*. at 321 (affirming order denying motion to compel arbitration because the exclusionary language arguably excluded the dispute from the scope of the arbitration clause such that arbitrability should have been adjudicated); *see also Querette v. Chromalloy Gas Turbine LLC*, No. 22-cv-00356, 2023 U.S. Dist. LEXIS 4502, at *10 (S.D.N.Y. Jan. 10, 2023) (finding the parties intended to carve-out questions regarding the arbitrability of explicitly excluded claims from the delegation clause).

---

[25] By contrast, all of the cases Aetna cites to support its argument concern an arbitration clause without any exclusionary language. (*See* Aetna's Memorandum at 12 (*citing Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005); *Doctor's Assocs. v. Pahwa*, No. 3:16-cv-00446, 2016 U.S. Dist. LEXIS 177427, at *19 (D. Conn. Nov. 3, 2016); *Lapina v. Men Women N.Y. Model Mgmt.*, 86 F. Supp. 3d 277, 283-84 (S.D.N.Y. 2015)).

The plain language of the Exclusionary Provision provides that "[a]ny controversy or claim" seeking "any [] form of equitable relief" is beyond the scope of the arbitration agreement. *See* Section B.2. This Exclusionary Provision at least arguably excludes Aramark's claims seeking exclusively equitable relief from the scope of the Arbitration Clause. *See* Section B.3 *supra*. Notwithstanding the incorporation of the AAA rules, that the Exclusionary Provision excludes the present dispute from the scope of the Arbitration Clause serves as "a substantial makeweight against construing the agreement to provide for arbitration of arbitrability." *Id*. at 320 (*citing Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 195 (2d Cir. 2019)).

The Court of Appeals for the Second Circuit has consistently held that language synonymous with the Exclusionary Provision reserves questions of arbitrability for the Court.[26] In *NASDAQ*, the court analyzed an arbitration provision that provided in relevant part:

> *Except as may be provided in the [] Requirements*, all claims, disputes, controversies, and other matters in question between the Parties to this Agreement . . . arising out of, or relating to this Agreement, or to the breach hereof, shall be settled by final binding arbitration in accordance with this Agreement . . . in accordance with the Commercial Arbitration Rules of the [AAA].

*NASDAQ OMX Grp., Inc. v. UBS, Sec., LLC*, 770 F.3d 1010, 1032 (2d Cir. 2014) (emphasis added). The court found that it was "far from clear and unmistakable" that the parties intended to delegate questions of arbitrability to an arbitrator, when the claim "at least arguably" fell within an exclusionary provision. *Id*.

---

[26]    In the Fifth Circuit, the law is even clearer. *See, e.g., Archer*, 935 F.3d 274 (finding parties clearly intended that a court decide the arbitrability of claims that fell within a clause excluding such claims from arbitration in the same sentence as the one incorporating the AAA rules); *J2 Res., LLC v. Wood River Pipe Lines, LLC*, No. 4:20-cv-2161, 2020 U.S. Dist. LEXIS 130594, *27 (S.D. Tex. July 23, 2020) (holding agreement reserved arbitrability questions for the court because the exclusionary provision was in the sentence incorporating the AAA rules); *Ultra Premium Servs. v. Kompaniya*, No. H-21-305, 2021 U.S. Dist. LEXIS 190217, *10 (S.D. Tex. Aug. 20, 2021) (same with respect to a clause incorporating the ICC rules).

In *DDK*, the court analyzed a similar arbitration provision with a carve out provision that provided, in relevant part:

> The parties unconditionally and irrevocably agree that, *with the exception of injunctive relief as provided herein, and except as provided in Section 16(c)*, all Disputed Matters that are not resolved pursuant to the mediation process provided in Section 16(a) may be submitted by either Member to binding arbitration administered by the [AAA].

*DDK*, 6 F.4th at 313 (emphasis added).  The court held that, because it was "arguable" that the dispute fell into the exclusionary clause, the parties had reserved the determination of arbitrability for the Court.  *Id.* at 331.

This Court should follow *NASDAQ* and *DDK* and apply the presumption that arbitrability questions should be resolved by the Court and not referred to an arbitrator.  As Aetna concedes, context matters, and the "incorporation of [the AAA] rules into an arbitration agreement does not, *per se*, demonstrate clear and unmistakable evidence of the parties' intent to delegate threshold questions of arbitrability to the arbitrator."[27]  *Id.* at 318 (emphasis in original).  This Court should reject Aetna's invitation to re-write the clause by ignoring the Exclusionary Provision and find that the Parties did not clearly and unmistakably delegate threshold questions of arbitrability to the arbitrator.

### 2. Equitable Claims Are Unambiguously Carved-Out from Mandatory Arbitration.

A "court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*."  *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) (emphasis added) (reversing the judgement of the district court because it had failed to determine whether the parties intended to arbitrate grievances concerning a particular

---

[27]    (Aetna's Memorandum at 14.)

matter).   To determine whether the parties agreed to arbitrate a particular dispute, the court considers: "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *NASDAQ*, 770 F.3d at 1032-1033.  Because the validity of the Agreement is not in dispute, the only question here is "whether, because of express exclusion or other forceful evidence, the dispute . . . is not subject to the arbitration clause." *AT&T Techs. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 652 (1986) (vacating the judgment of the appellate court because the court had failed to give effect to the exclusionary provision in the arbitration agreement).

There can be no dispute that the Aetna-drafted arbitration clause intended to exclude equitable claims from arbitration.   Courts should "rigorously enforce [arbitration] agreements according to their terms," "like other contracts." *Volt Info. Scis. v. Bd. of Trs.,* 489 U.S. 468, 478.(1989).   "[I]t is the language of the contract that defines the scope of disputes subject to arbitration." *NASDAQ*, 770 F.3d at 1033; *see also Snowbridge Advisors LLC v. Soho Square Cap. LLP*, 2023 WL 8368630, at *3 (2d Cir. 2023) ("While we may not dismiss a contract claim 'predicated on a materially ambiguous contract term,' when an agreement is 'complete, clear and unambiguous on its face, it must be enforced according to the plain meaning of its terms.'") (citation omitted).   "Where the parties to an arbitration agreement specifically [] excepted a certain type of claim from mandatory arbitration, it is the duty of courts to enforce not only the full breadth of the arbitration clause, but its limitations as well." *N.Y. v. Oneida Indian Nation*, 90 F.3d 58, 62 (2d Cir. 1996) (reversing the district court's referral of claims to arbitration because it "failed to recognize the applicability of the exclusionary clause" in analyzing a broad agreement).   "The Court must [] be guided by the plain language" of the exclusionary language to determine if it carves-out claims seeking equitable relief from arbitration. *Frydman v. Diamond*, No. 1:14-cv-

8741, 2015 U.S. Dist. LEXIS 120774, at *16 (S.D.N.Y. Sept. 10, 2015). A "crystal clear and unambiguous exclusionary clause must be given effect" by assessing "the arbitrability of the claim under the entire arbitration section, including the exclusionary clause." *Oneida*, 90 F.3d at 62.

The Exclusionary Clause unequivocally reflects the Parties' intent to exclude all claims seeking "any [] form of equitable relief" from mandatory arbitration. To give effect to the Exclusionary Clause, this Court should find that Aramark's claims for exclusively equitable relief are outside the scope of the Arbitration Clause.

Aetna's argument to the contrary ignores controlling Supreme Court and Second Circuit precedent. Aetna argues that the Court should view the Arbitration Clause as "broad" enough to trigger a presumption of arbitrability, and "test the presumption of arbitrability by asking whether plaintiffs' allegations implicate or touch on issues of contract construction or the parties' rights and obligations under the contract."[28] *Specht v. Netscape Commc'ns. Corp.*, 306 F.3d 17, 36 (2d Cir. 2022). But in *Granite Rock*, the Supreme Court rejected the argument that a broad arbitration clause alone triggers a presumption of arbitrability. *Granite Rock*, 561 U.S. at 300. The Supreme Court emphasized that a policy favoring arbitration cannot supersede the "settled framework for deciding arbitrability" based on the "express" terms of an arbitration clause. *Id*. at 302-303 ("[C]ourts may [not] use policy considerations as a substitute for party agreement.").

Consistent with these principles, in *Local Union*, the Court of Appeals for the Second Circuit concluded that "to presume that a dispute is arbitrable because an arbitration clause is framed broadly runs the risk of requiring parties to arbitrate disputes they did not consent to be arbitrated." *Local Union 97, IBEW v. Niagara Mohawk Power Corp.*, 67 F.4th 107, 114 (2d Cir.

---

[28]    (Aetna's Memorandum at Section IV.A (citing *Specht*, 306 F.3d 17; *Holick v. Cellular Sales of N.Y., LLC*, 802 F.3d 391, 395 (2d Cir. 2015); *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.*, 858 F.2d 825, 832 (2d Cir. 1988).)

2023) (*citing Granite Rock*, 561 U.S. at 298-299).  In so concluding, the Second Circuit expressly

overruled *Holick*, 802 F.3d 391, the precedent on which Aetna relies, by confirming these are (i)

"inconsistent with the Supreme Court's holdings in *Granite Rock*," (ii) premised on "the wrong

legal standard," and (iii) "cannot be good law." *Local Union*, 67 F.4th at 114 (expressly overruling

*Holick*, 802 F.3d 391 and other cases applying a presumption of arbitrability to broad agreements).

Therefore, Aetna's attempt to cast the Arbitration Clause as "broad" is of no consequence.

     *Local Union* instructs that, instead, the Court should determine "whether, under ordinary

principles of contract interpretation, a particular dispute is covered by the language to which the

parties agreed." *Local Union*, 67 F.4th at 114 (determining whether a dispute is within the scope

of a broad agreement without applying a presumption of arbitrability).  A "presumption of

arbitrability is a court's last, rather than first, resort." *Id.*  Courts "in the first instance . . . must

consider the intent of the parties" by analyzing the "plain terms of the Agreement." *Galanova v.

Morgan Stanley Servs. Grp. Inc.*, No. 23-cv-183, 2023 U.S. Dist. LEXIS 169606, at *9 (S.D.N.Y.

Sept. 22, 2023) (determining whether a dispute is within the scope of a broad agreement without

applying a presumption of arbitrability); *Silver Line*, 2024 U.S. Dist. LEXIS 48608, at *7 (finding

that "the carve-out sentence [is] an unambiguous removal of [] disputes from the binds of

arbitration" without applying a presumption of arbitrability to a broad agreement).  Aetna doesn't

cite a single case that post-dates *Local Union*.  In fact, one case Aetna case, *Pennzoil Exploration

& Prod. Co. v. Ramco Energy*, 139 F.3d 1061, 1068 n.8 (5th Cir. 1998), explicitly concedes that

"even broad clauses have their limits."

     Aetna's alternative contention that "Aramark's claims are arbitrable because they are

breach-of-contract claims masquerading as ERISA claims,"[29] and "touch matters covered by the

---

[29]    (Aetna's Memorandum at 28.)

parties' agreements"[30] asks this Court to apply an analysis that was explicitly overruled by the Supreme Court and the Second Circuit.[31]  Even if this Court were to entertain Aetna's argument, the law is clear: when an action for equitable relief "falls entirely and explicitly within the terms of the [arbitration clause] carve-out," it is not arbitrable, even if it "relat[es] to the same subject matter [that] will have to be arbitrated." *Major, Lindsey & Africa, LLC v. Mahn*, No. 10-cv-4239, 2010 U.S. Dist. LEXIS 94033, at *11 (S.D.N.Y. Sept. 7, 2010) (giving effect to an exclusionary provision, which turned on the legal basis of claims, by focusing on the nature of the claims as asserted by the claimant, rather than the factual allegations in the complaint).[32]  Aramark, as the master of its complaint, sued Aetna for breaching its ERISA fiduciary duties.  Aetna's attempt to re-characterize Aramark's claims to circumvent the unambiguous Exclusionary Provision, and force the arbitration of claims the Parties clearly did not agree to arbitrate, should be rejected.

Aetna similarly misses the point by trying to argue that the language of the Exclusionary Provision does not carve-out equitable relief from the scope of the Arbitration Clause, but "simply confirms an already extant, independent legal right" to seek equitable relief in a court "in aid of arbitration." *GateGuard, Inc. v. MVI Sys. LLC*, No. 19-cv-2472, 2021 U.S. Dist. LEXIS 185722, at *22 (S.D.N.Y. Sept. 28, 2021) (finding an exclusionary provision is not a carve-out if it "merely declares [a party's] existing legal rights" by emphasizing that the party "retains the right to seek," "may elect to seek," is "entitled to pursue," is "entitled to seek," or "may apply" for equitable relief

---

[30]    (*Id*. at 17 (*citing Specht*, 306 F.3d at 36).)

[31]    Prior to *Local Union*, to test the presumption of arbitrability triggered by a broad agreement, courts would determine if the claims "touch matters covered by the agreement" by "focus[ing] on the factual allegations in the complaint rather than the legal causes of action asserted." *Specht*, 306 F.3d at 37.

[32]    *See also Lavvan, Inc. v. Amyris, Inc.*, No. 20-cv-7386, 2021 U.S. Dist. LEXIS 138887, at *7 (S.D.N.Y. July 26, 2021) (giving effect to an exclusionary provision, which turned on the legal basis of claims, by focusing on the nature of the claims as asserted by the claimant); *Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home & Allied Workers*, 788 F.2d 894, 898 (2d Cir. 1986) (finding the applicability of a "crystal clear and unambiguous" exclusionary provision cannot be circumvented by changing the label of the claimant's claims).

from a court). Aetna's argument is belied by the plain language of the Exclusionary Provision that

plainly carves-out from arbitration "[a]ny controversy or claim" seeking "any [] form of equitable

relief." *See Silver Line*, 2024 U.S. Dist. LEXIS 48608, at *11 (in interpreting an arbitration

agreement, "a limiting clause or phrase should ordinarily be read as modifying only the noun or

phrase that it immediately follows"). There is no other way to reasonably interpret this language.

Aetna's insistence that the Exclusionary Provision more closely tracks the language of

*GateGuard* than *Archer*, is directly contradicted by the language of the respective agreements.

The Exclusionary Provision provides:

> Any controversy or claim arising out of or relating to this Agreement
> or the breach, termination, or validity thereof, *except for temporary,
> preliminary, or permanent injunctive relief or any other form of
> equitable relief*, shall be settled by binding arbitration.

Similarly, the exclusionary provision in *Archer* provides:

> Any dispute arising under or related to this Agreement (*except for
> actions seeking injunctive relief and disputes related to trademarks,
> trade secrets, or other intellectual property of Pelton & Crane*),
> shall be resolved by binding arbitration.

*Archer*, 935 F.3d at 278 (emphasis added). By contrast, the language of the exclusionary provision

in *GateGuard* merely declares existing legal rights:

> [A]ny dispute, claim or controversy arising out of or relating to the
> Terms or the breach, termination, enforcement, interpretation or
> validity thereof, or to the use of the Site will be settled by binding
> arbitration, *except that GateGuard alone retains the right to seek
> injunctive or other equitable relief in a court of competent
> jurisdiction*.

*GateGuard*, 2021 U.S. Dist. LEXIS 185722, at *16 (emphasis added). The Exclusionary Provision

plainly mirrors that in *Archer*, not *GateGuard*. Aetna's argument that the Exclusionary Provision

is not a carve-out like the one in *Archer*, and instead simply confirms a right to seek equitable relief in aid of arbitration like the one in *GateGuard*, stretches the bounds of credulity.[33]

It should not be lost in this analysis that Aetna is a sophisticated company that "knew how to write a limited aid of arbitration provision" that merely confirms the parties' "right to seek" equitable relief from a court in aid of arbitration. *Frydman*, 2015 U.S. Dist. LEXIS 120774, at *15. Since 2011, Aetna has known that claims for breach of fiduciary duty under ERISA § 1132(a)(3), seek equitable relief. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 442 (2011) discussed in Section B.3. "Instead, they wrote, and agreed to, [the Exclusionary Provision], which is explicitly a provision that supports litigation *in lieu* of arbitration, not in aid of it." *Id*. (emphasis added). "The Court cannot accept [Aetna's] invitation to re-write [the Exclusionary Provision] into an aid in arbitration provision" particularly when Aetna has previously and successfully persuaded tribunals to adopt the exact opposite interpretation. *Id*. at *19.

### 3. Aramark's Claims in the Texas Action Seek Exclusively Equitable Relief.

Under *Amara*, Aramark's ERISA claims for monetary relief brought against Aetna for breach of fiduciary duty are equitable and therefore excluded from the Arbitration Clause. *See Amara*, 563 U.S. at 442. In other proceedings, Aetna itself has argued that such claims are equitable. For example, in *Group 1 Auto., Inc. v. Aetna Life Ins. Co.*, No. 4:20-cv-1290 (S.D. Tex. Apr. 10, 2020), Aetna argued that ERISA claims pursuant to Section 1132(a)(2) seeking equitable relief are not arbitrable under its standard arbitration clause excluding claims seeking "temporary,

---

[33]    Although Aetna's heavy reliance on *GateGuard* may suggest it is binding precedent on point—it is not—courts have found that exclusionary provisions just like the one in *GateGuard* carve-out claims seeking equitable relief from the scope of an arbitration clause. *See Allcity Family Healthcare Ctr., LLC v. Boss Surgical Grp., LLC*, No. 12-cv-6428, 2014 U.S. Dist. LEXIS 112293, at *4 (E.D.N.Y. Aug 12, 2014) (finding an exclusionary provision that said "parties hereto shall have the right to apply for . . . injunctive or equitable relief from a court" carved-out claims seeking equitable relief from the scope of the arbitration provision).

preliminary, or permanent injunctive relief *or any other form of equitable relief*."[34]  Citing *Amara*, the arbitrator in *Group 1* accepted and affirmed Aetna's agreement and interpretation that ERISA claims against Aetna as a fiduciary are equitable and thus not arbitrable under an exclusionary provision identical to the one at issue here.[35] [36]  *Group 1* is not an outlier.  Aetna has argued ERISA claims are equitable in at least four other actions.[37]  While Aetna's prior positions and representations to judicial officers should be dispositive, they are not without support. Overwhelming precedent compels the conclusion that Aramark's ERISA claims seeking general monetary relief against fiduciaries to compensate for breach of fiduciary duty are equitable.

The Supreme Court in *Amara* held that ERISA claims for breach of fiduciary duty against a plan fiduciary sound in trust law, which is traditionally equitable.  *Amara*, 563 U.S. at 442 (explaining that, at equity, a "surcharge remedy extended to a breach of trust committed by a fiduciary encompassing *any violation of a duty* imposed upon that fiduciary") (emphasis added). The fact that the claims seek "money payment does not remove [them] from the category of traditionally equitable relief."[38]  *Id.* at 441.  Rather, courts of equity "possessed the power to provide relief in the form of monetary "compensation" for a loss resulting from a trustee's breach

---

[34]    (*See* Schiefelbein Decl.,¶ 6, Ex. D, at 2 (emphasis added).)

[35]    (*Id.*)

[36]    The plaintiff in *Group 1* chose to proceed through arbitration, then brought its ERISA claims in S.D. Tex. after Aetna successfully dismissed the ERISA claim from arbitration on the basis that it sought equitable relief.

[37]    (*See* Schiefelbein Decl., ¶ 7, Ex. E, Aetna' Mot. to Strike Jury Demand in *Minerley v. Aetna, Inc. et al.*, No. 13-cv-1377 (D.N.J. Feb. 16, 2017) (ECF No. 106), at 1–2 (arguing ERISA claims under 29 U.S.C. § 1132(a)(3) are equitable); *id.*, ¶ 8,  Ex. F, Aetna's Mot. to Dismiss in *United Surgical Assistants, LLC v. Aetna Life Ins. Co. et al.*, No. 8:14-cv-00211 (M.D. Fla. Sept. 24, 2014) (ECF No. 61.), at 12 (same); *id.*, ¶ 9, Ex. G, Aetna's Mot. to Dismiss in *Simon v. Aetna Life Ins. Co. et al.*, No. 6:18-cv-01097 (M.D. Fla. Aug. 10, 2018) (ECF No. 9), at 20 (same); *id.*, ¶ 10, Ex. H, Aetna's Reply in Support of its Mots. to Dismiss in *Peck v. Aetna Life Ins. Co.*, No. 3:04-cv-1139 (D. Conn. Nov. 4, 2004) (ECF No. 23), at 7 (same).)

[38]    Such claims arise out of trust law, which is traditionally equitable.  *See In re Omnicom Grp. Inc. Erisa Litigation*, No. 1:20-cv-4141, 2022 WL 18674830, at *15 (S.D.N.Y. Dec. 23, 2022) (quoting *Donovan v. Bierwirth*, 680 F.2d 263, 271–72 n.8 (2d Cir. 1982)) ("Under ERISA, the duties owed by fiduciaries to plan participants and beneficiaries 'are those of trustees of an express trust—the highest known to the law.'").

of duty, or to prevent the trustee's unjust enrichment." *Id.* Under *Amara*, it is irrelevant whether such relief seeks specific or general funds.

The key inquiry identified in *Amara* is whether ERISA claims allege *breach of fiduciary duty* against *plan fiduciaries* and seek compensation for the same. On that point, *Amara* distinguished prior Supreme Court precedent interpreting the relief available under § 1132(a)(3)— *Mertens v. Hewitt Assocs.*, 508 U.S. 248 (1993) and *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)—on the basis that the defendants in those cases *were not fiduciaries. Amara*, 563 U.S. at 438-439, 442 (holding "[t]he fact that the defendant in *this* case . . . is analogous to a trustee makes a critical difference.") (emphasis added).

As in *Amara,* the claims at issue here are claims "against a plan fiduciary (whom ERISA typically treats as a trustee) about the terms of a plan…." *Id.* at 439. Aramark's First Amended Complaint seeking "recovery of any and all losses" and "benefits or profits Aetna made as a result of its breach of its fiduciary duty," and "all such other equitable or remedial relief as may be appropriate," is sufficient to state a "plausible claim" for equitable relief under *Amara. See Gearlds*, 709 F.3d at 452.[39] Aetna does not dispute that it is a fiduciary under ERISA—nor can it dispute that Aramark's claims sufficiently plead that Aetna is an ERISA fiduciary.[40] Therefore, Aramark's claims against Aetna seek a "form of equitable relief" that fall squarely within the Exclusionary Provision.

---

[39]    (*See also* Petition Ex. A at ¶¶ 108, 116, 124 and 131.)

[40]    *See, e.g., Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000) ("We agree with Aetna that the company qualifies as a fiduciary for purposes of the statute. When an insurance company administers claims for an employee welfare benefit plan and has authority to grant or deny the claims, the company is an ERISA 'fiduciary' under 29 U.S.C. § 1002(21)(A)(iii)."); (Agreement at pg. 15 ("The Customer and Aetna agree that with respect to Section 503 of [ERISA], as amended, Aetna will be the 'appropriate named fiduciary' of the Plan for the purpose of reviewing denied claims under the Plan . . . Customer hereby delegates to Aetna discretionary authority to determine entitlement to benefits . . . and discretionary authority to construe the terms of the Plan.").)

The Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits agree that § 1132(a)(3) claims for monetary relief against a fiduciary are equitable under *Amara*.[41]  For example, in the matter of *DeRogatis*, the Second Circuit explained that, "[i]n addition to injunctions, plaintiffs asserting a claim under section [1132](a)(3) may seek remedies such as estoppel, equitable reformation of plan terms, or a monetary 'surcharge' to recompense 'a loss resulting from a [fiduciary's] breach of duty, or to prevent the [fiduciary's] unjust enrichment.'" 904 F.3d 174, 199 (2d Cir. 2018) (alterations in original) (citing *Amara*, 563 U.S. at 440-42).  As the *Sullivan-Mestecky* court explained, where § 1132(a)(3) claims "plausibly plead" breach of fiduciary duty and request monetary relief based on that alleged breach, the claims are "sufficient to support the equitable remedy of surcharge."  *Sullivan-Mestecky*, 961 F.3d at 102.  *Sullivan-Mestecky* also made clear that such claims need not identify specific funds in the defendants' possession.  *Id.* at *105 n.44 ("Like other circuits that have considered surcharge in ERISA cases post-*Amara* . . . we think it appropriate for a plaintiff to seek relief *in the amount of* the promised policy . . . under the equitable remedy of surcharge.") (emphasis added).  Both Second Circuit decisions were rendered years after *Montanile v. Bd. of Trs. of the Nat'l Elevator Indus. Health Benefit Plan*, 577 U.S. 136 (2016)—the Supreme Court's most recent holding in the *Amara* line of cases.

Aetna's reliance on *Rose v. PSA Airlines*, 80 F.4th 488, 496-504 (4th Cir. 2023), *petition for cert. filed*, holding that ERISA claims must seek specific funds to be equitable, is misplaced.

---

[41]        *See In re DeRogatis*, 904 F.3d 174, 199 (2d Cir. 2018); *Sullivan-Mestecky v. Verizon Commc'ns Inc.*, 961 F.3d 91, 102 (2d Cir. 2020); *Staropoli v. Metro. Life Ins. Co.*, No. 21-2500, 2023 WL 1793884, at *4 (3d Cir. Feb. 7, 2023) (unpublished); *Menkes v. Prudential Ins. Co. of Am.*, 762 F.3d 285, 296 n. 11 (3d Cir. 2014) (in dicta); *Gearlds*, 709 F.3d at 450-451; *Brown v. United of Omaha Life Ins. Co.*, 661 F. App'x 852, 860 (6th Cir. 2016) (in dicta); *Kenseth v. Dean Health Plan, Inc.*, 722 F.3d 869, 882 (7th Cir. 2013); *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 720-22 (8th Cir. 2014); *Gabriel v. Alaska Elec. Pension Fund*, 773 F.3d 945, 957 (9th Cir. 2014); *Teets v. Great-W. Life & Annuity Ins. Co*., 921 F.3d 1200, 1224 (10th Cir. 2019) (in dicta); *Gimeno v. NCHMD, Inc.*, 38 F.4th 910, 915 (11th Cir. 2022).

The *Rose* majority opinion, which primarily relied on *Montanile*, a case brought against a *non-fiduciary*, ignored the "critical" distinction in *Amara* between claims against non-fiduciaries versus claims against fiduciaries.  *Id*. at 507 (Heytens, J., concurring in part and dissenting in part). According to *Amara,* when the defendant is an ERISA fiduciary, a plaintiff "need not show the fruits of a defendant's wrongdoing are traceable to particular funds remaining in that defendant's possession to state a claim under ERISA."  *Id*.  The plaintiff "need only plead and prove the defendant was a fiduciary and that any money sought represents 'make-whole relief' for a 'violation of a duty imposed upon that fiduciary.'"  *Id.* (citing *Amara*, 563 U.S. at 442).

As the dissent in *Rose* made clear, there is no reason for this Court to depart from Second Circuit precedent characterizing ERISA claims for breach of fiduciary duty as equitable "surcharge," irrespective of whether such claims seek general funds.[42]  Since the *Rose* decision, courts around the country continue to follow *Amara*'s holding that § 1132(a)(3) claims against fiduciaries seek traditional equitable relief.[43]  Most importantly, the Fourth Circuit's holding that *Montanile* abrogated *Amara* should not be read to overrule Second Circuit precedent applying

---

[42]     *Aetna* cites *Central States, Southeast and Southwest Areas Health and Welfare Fund v. Gerber Life Ins. Co*., 771 F.3d 150, 151 (2d Cir. 2014) and *Great-West* for the proposition that "restitution under § [1132](a)(3)" is legal if it seeks "general assets."  Aetna Memorandum at 23.  However, *Central States'* holding on restitution "has nothing to do with the imposition of an equitable *surcharge*—which under the law of trusts was levied directly against the trustees." *DeRogatis v. Bd. of Trustees of Welfare Fund of Int'l Union of Operating Engineers Local 15, 15A, 15C & 15D, AFL-CIO*, 385 F.Supp.3d 308, 319 (S.D.N.Y. 2019) (emphasis in original) (denying motion for summary judgment on Section [1132](a)(3) claim  because "'surcharge' under *Amara*" does not "require [plaintiff's] injury to be traceable to any particular Welfare Fund assets"); *see also Acosta v. Bridgeport Health Care Ctr., Inc.*, No. 3:16-cv-1519, 2018 U.S. Dist. LEXIS 246858, at *5 (D. Conn. Sept. 5, 2018) (declining to follow *Central* or *Great-West* and holding that "The Court's subsequent decision in *Amara* is applicable here.  In that case, the Court recognized that the remedy of 'surcharge' was equitable in nature.")  Moreover, neither *Central* nor *Great-West* alleged breach of fiduciary duty.  *See Carver v. Bank of N.Y. Mellon*, No. 15-CV-10180, 2017 WL 1208598, at *11 (S.D.N.Y. Mar. 31, 2017) (distinguishing *Great-West* and holding that ERISA claims alleging breach of fiduciary duty were equitable where "Plaintiffs expressly allege that [Defendant] was a fiduciary of the Plans").

[43]     *See, e.g., GC Am. Inc. v. Kevin Hood, et al.,* No. 20-cv-03045, 2023 WL 6290281, at *6 (N.D. Ill. Sept. 27, 2023); *Swartzenbruber v. Sentara RMH Med. Ctr.*, No. 5:22-cv-055, 2023 WL 6279361, at *7 (W.D. Va. Sept. 26, 2023); *Marlowe v. WebMD, LLC*, No. 22-cv-3284, 2023 WL 6198665, at *6 (S.D.N.Y. Sept. 22, 2023); *Popvchak v. UnitedHealth Grp. Inc.*, No. 22-cv-10756, 2023 WL 6125540, at *10 (S.D.N.Y. Sept. 19, 2023); *Northern Jersey Plastic Surgery Ctr., LLC v. 1199SEIU Nat'l Benefit Fund*, 2023 WL 5956142, at *8 (S.D.N.Y. Sept. 13, 2023).

*Amara* to § 1132(a)(3) claims. *Montanile* (2016) was decided before the Second Circuit decided *In re DeRogatis* (2018) and *Sullivan-Mestecky* (2020) and, unlike those Second Circuit cases, *Montanile (2016)* was brought against a *non-fiduciary*. The law is no different in the Fifth Circuit. *See Gearlds*, 709 F.3d at 450-451 (holding the "critical" distinction outlined in *Amara* is the "defendant's position as a fiduciary [being] analogous to a trustee."); *Harmon*, 2023 WL 2474503 ("[I]t appears that it is of no import to the Supreme Court whether monetary remedies are targeted at specifically identifiable funds or at general assets. Instead, the appropriate question asks whether the monetary remedies sought are for a breach of duty by a fiduciary.") (citing *Amara*, 563 U.S. at 442).

Aetna argues that § 1132(a)(2) claims seek legal relief. Although *Amara* addressed only ERISA claims arising under § 1132(a)(3), the majority view is that § 1132(a)(2) claims are likewise equitable.[44] By filing in Connecticut, it is apparent that Aetna is attempting to exploit an internal circuit split on whether (a)(3) and (a)(2) claims are equitable.[45] *See Vellali v. Yale Univ.*, 2023 WL 2552719, at *5 (D. Conn. Mar. 17, 2023); *Garthwait v. Eversource Energy Co.*, 2022 WL 17484817, at *2 (D. Conn. Dec. 7, 2022) ("[T]he key is identifiable property in the hands of the defendant."); *Cunningham*, 2018 WL 4279466, at *6 (holding that ERISA claims to recover money that was never paid to defendant were legal and explaining there is a "split among district courts within [the Second] Circuit on whether a claim for compensatory damages for breach of

---

[44]    *See Harmon*, 2023 WL 2474503, at *3 (holding that *Amara* did not "suggest that relief that is equitable under subsection (a)(3) might be legal under subsection (a)(2)" and that "[t]his view is in line with that of a majority of district courts considering ERISA claims against fiduciaries.") (collecting cases); *Divane v. Nw. Univ.*, No. 16-cv-8157, 2018 WL 1942649, at *2 (N.D. Ill. Apr. 25, 2018) (holding "the relief plaintiffs seek in this . . . [§ 1132(a)(2)] suit is *equitable*"); *see also Henderson v. Emory Univ.*, No. 1:16-cv-2920, 2018 WL 11350441, at *2–5 (N.D. Ga. Feb. 28, 2018) (compiling cases holding that monetary relief sought under § 1132(a)(2) claims constitute equitable surcharge).

[45]    *But see, e.g., Popovchak v. UnitedHealth Grp. Inc.*, No. 22-cv-10756, 2023 WL 6125540, at *18 (S.D.N.Y. Sept. 19, 2023) (striking Plaintiff's jury charge "because the Second Circuit has long held that ERISA benefits claims do not trigger the right to a jury trial.").

fiduciary duty requires the empanelment of a jury.").  Aetna's position should be rejected as none of these cases challenge *Amara*'s holding that surcharge is an equitable remedy available under ERISA.  *See, e.g., Cunningham*, 2018 WL 4279466, at *2 n.1 (noting that surcharge is a "traditional equitable remedy").

*Vellali*, *Garthwait*, and *Cunningham* are not applicable outside the Seventh Amendment context.  Each rely heavily on *Pereira v. Farace*, 413 F.3d 330, 340 (2d Cir. 2005), a non-ERISA and pre-*Amara* Seventh Amendment decision in a bankruptcy trustee case.  Because *Pereira* relied on the history of equitable claims when the Seventh Amendment was ratified (1971) rather than, as in *Amara*, when Federal Rule of Civil Procedure 2 was adopted (1938), courts sitting in the Second Circuit have suggested that *Amara* could overrule *Pereira* outside the Seventh Amendment context.[46]  *See also Amara*, 563 U.S. at 439 (explaining how *ERISA* "typically treats" plan fiduciaries and plans in a manner similar to trustees and trusts at equity).  This Court should instead focus on Second Circuit *ERISA* decisions applying *Amara* outside the Seventh Amendment context.  *See In re DeRogatis*, 904 F.3d at 200 (vacating decision granting summary judgment where trial court did not consider whether plaintiff would "be entitled to a surcharge or some other form of 'appropriate equitable relief' under ERISA section [1132](a)(3)"); *Sullivan-Mestecky*, 961 F.3d 91 (vacating decision dismissing section [1132](a)(3) claim where plaintiff "plausibly pled circumstances that would entitle her to 'appropriate equitable relief'").

Even in Seventh Amendment cases, *Pereira* has been questioned for "over-read[ing] *Great-West.*"[47]  *Cunningham*, 2018 WL 4279466, at *3.  On that basis, Seventh Amendment cases

---

[46]     *See Cunningham*, 2018 WL 4279466, at *3; *Id.* at *4 (holding that *Pereira* and *Amara* do not conflict enough "[i]n the context of the assertion of a constitutional right to trial by jury" to overrule Second Circuit precedent); *See also Garthwait*, 2022 WL 17484817, at *3 ("[R]eliance on *Amara in a Seventh Amendment* setting is not without flaw.") (emphasis added).

[47]     Unlike in *Amara,* the plaintiff in *Great-West* did not allege breach of fiduciary duty.  *See Carver*, 2017 WL 1208598, at *11.

outside the Second Circuit have declined to follow *Cunningham*. *See, e.g.*, *Harmon*, 2023 WL 2474503, at *3 (holding that *Cunningham* and other dissenting cases "fail to convince me that *Amara* is not dispositive on this matter."); *Reed v. MedStar Health, Inc.*, 2023 WL 5154507, at *6 (D. Md. 2023) ("In *Cunningham*, the court departed from the majority approach that claims under § 1132(a)(2) are equitable in nature because it was constrained by its circuit's interpretation of *Great-West* in a non-ERISA case, *Pereira*.") (citing *Williams v. Centerra Grp., LLC*, 579 F. Supp. 3d 778, 785 (D.S.C. 2022)); *Ramos v. Banner Health*, No. 15-cv-2556, 2019 WL 1558069, at *4 (D. Colo. 2019) (declining to follow *Cunningham* on the same basis); *Tracey v. Mass. Inst. of Tech.*, 395 F. Supp. 3d 150, 154 (D. Mass. 2019) (same). Aetna should not be permitted to benefit from a minority line of cases in this circuit that have been expressly rejected outside of the Second Circuit, including in the Eastern District of Texas.

## III.    CONCLUSION

For the foregoing reasons, Aramark respectfully requests that this Court stay this proceeding pending the resolution of its merits in the Texas Action, dismiss this matter in favor of the first-filed Texas Action, or transfer this matter to the District Court for the Eastern District of Texas.

Respectfully submitted,

/s/ David I. Schiefelbein
David I. Schiefelbein
N.Y. Bar No. 4767398 (PHV No. phv207782)
**MCKOOL SMITH, P.C.**
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
dschiefelbein@mckoolsmith.com
Telephone: (212) 402-9400
Facsimile: (212) 402-9444

Jon D. Corey
D.C. Bar No. 491311 (PHV No. phv08508)
**MCKOOL SMITH, P.C.**
1999 K Street, N.W., Suite 600
Washington, DC 20006
jcorey@mckoolsmith.com
Telephone: (202) 370-8300
Facsimile: (202) 370-8344

Patrick J. McHugh
CT Bar No. CT14072
**PATRICK MCHUGH LAW LLC**
6 Landmark Square, 4th Floor
Stamford, CT 06901
patrick@pmchughlaw.com
Telephone: (203) 403-2217
Facsimile: (914) 478-4142

*Attorneys for Respondents Aramark Services, Inc.*
*f/k/a Aramark Corporation; Aramark Services, Inc.*
*Group Health Plan; Aramark Uniform Services*
*Group Health and Welfare Plan; and Aramark*
*Benefits Compliance Review Committee.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 29th day of March, 2024, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to all counsel of record.

<span style="padding-left: 3em;">*/s/ David I. Schiefelbein*</span>
<span style="padding-left: 3em;">David I. Schiefelbein</span>